UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA          CRIMINAL NO. 14-cr-00218(02)

VERSUS                             JUDGE HICKS

LINDA G. BROWN                     MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION ON COMPETENCY

**Introduction**

Defendant Linda Gail Brown, her husband Ricky Swift, her son Shawn Swift, and another individual were indicted on charges of conspiracy to distribute and to possess with intent to distribute cocaine, possession with intent to distribute cocaine, and other related charges. Ms. Brown entered a guilty plea to the conspiracy charge. While awaiting sentencing, an issue was raised regarding her competency. For the reasons that follow, it is recommended that Ms. Brown be found competent to be sentenced.

**Applicable Law**

The Constitution does not permit the trial of an individual who lacks mental capacity. United States v. Fields, 761 Fd.3d 443, 467 (5th Cir. 2014). It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial. Drope v. Missouri, 420 U.S. 162, 171 (1975); Dusky v. United States, 362 U.S. 402 (1960). Under Dusky, the test is whether the defendant

has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him. Id. A defendant must also be competent to be sentenced. Hill v. Davis, 216 WL 3030175 (N. D. Tex.).

While mental illness is certainly a factor in the evaluation of a defendant's competence, mental illness is not dispositive of incompetence. See United States v. Lang, 447 Fed. Appx. 552 (5th Cir. 2011); United States v. Garcia-Vargas, 2016 WL 3913434 (5th Cir.) ("Whether Garcia-Vargas was suffering from delusional disorder is irrelevant, however, if he was both able to understand the nature and consequences of the proceedings and had sufficient present ability to assist counsel in his defense with a reasonable degree of rational understanding."); Mays v. Stephens, 757 F.3d 211, 216 (5th Cir. 2014), cert. denied, 135 S.Ct. 951 (2015) ("A defendant can be both mentally ill and competent to stand trial.").

**Factual Background**

The charges against Ms. Brown are the result of drugs, money, and guns found in her home during the execution of a federal search warrant. Half a kilogram of powder cocaine was discovered in the kitchen pantry; 31 firearms were found and seized, including firearms located in Ms. Brown's bedroom; and approximately $237,000 in U.S. currency was found in a safe in another bedroom. Pre-Sentence Investigation Report at ¶ 13. Ms. Brown was present at her home when the search warrant was executed. Doc. 81-2, p. 2.

Linda Brown entered a guilty plea to the conspiracy charge. The factual basis (Doc. 81) shows that the total drug quantity involved in the conspiracy is between 500 grams and

2 kilograms of powder cocaine. The factual basis also provides that Ms. Brown was intercepted on wiretaps on a telephone used by her son, Shawn Swift, discussing the business of drug trafficking and the use and safekeeping of drug proceeds. The wiretaps also revealed that Ms. Brown agreed to and did, in fact, provide money to a drug courier in exchange for some of the drugs.

The transcript of Ms. Brown's guilty plea (Doc. 169) is, for the most part, unremarkable. Ms. Brown testified under oath that she was 59 years old and had a high school diploma plus three years of college. With regard to Ms. Brown's understanding of the charge to which she was pleading guilty, the transcript reveals:

> THE COURT: All right. Tell me, in your own words, what you think you're pleading pleading guilty to.
>
> THE DEFENDANT: I guess what I think I'm pleading guilty to is knowing that my son was selling drugs and doing what my son asked me to do, as far as the telephone conversation that they say I had, and the bag that I accepted.
>
> THE COURT: Okay. And essentially helping other people to distribute cocaine, right?
>
> THE DEFENDANT: Yes. Yes, sir.

Id. at p. 7 of 13.

When asked about Defendant's competency, the following exchange took place between the court and Defendant's counsel, J. Ransdell Keene:

> THE COURT: Mr. Keene, you have talked to your client today?
>
> MR. KEENE: Yes, sir.
>
> THE COURT: Any doubt in your mind as to her competence to plead?

  MR. KEENE: She is competent.

Id. at p. 4 of 13. Following that exchange, the court stated: "I find her competent." Id. at p. 5 of 13. Following the acceptance of her guilty plea, a sentencing date was set by the court.

  Up to this point in the criminal proceedings against Ms. Brown, no suggestion was ever made that she was incompetent to stand trial, plead guilty, or be sentenced. However, during the pre-sentence investigation, Ms. Brown became so emotional during interviews with the United States probation officer that it was difficult for the officer to obtain information from her. The probation officer notified the court and defense counsel of that difficulty.

  Mr. Keene requested that Ms. Brown's sentencing be converted to a status conference. At that conference, Mr. Keene raised for the first time the issue of Ms. Brown's competency. Doc. 127. Shortly thereafter, the court ordered Ms. Brown to undergo a psychiatric or psychological examination at FMC Butner. Doc. 129. It was later determined that Butner is a male-only facility, so Mr. Keene filed at motion to appoint a Shreveport psychologist, Dr. Mark Vigen, to evaluate Ms. Brown locally. The court granted the motion, stating: "Dr. Mark Vigen is appointed to conduct a mental health evaluation of Ms. Brown to assist the court in sentencing and to determine whether Mrs. Brown is competent to stand trial. The examination shall be paid by and pursuant to the CJA, but the amount shall not exceed $2,500." Doc. 131.

Dr. Vigen's report states that Ms. Brown has pre-senile degenerative brain disorder, most likely Alzheimer's, and possibly a dissociative disorder. Dr. Vigen concluded that Ms. Brown is not able to meaningfully participate in legal proceedings, and it is very likely that she will need custodial care and interdiction. Doc. 149.

The Government responded to Dr. Vigen's report with a request that Ms. Brown be sent to a BOP facility for a psychiatric or psychological examination. Doc. 155. The motion was granted, and Ms. Brown was ordered to self-report to FMC Carswell, a womens' medical facility in Forth Worth, Texas. Docs. 156 and 158. The report issued by the forensic psychologists at FMC Carswell found that Ms. Brown is competent to be sentenced, but she would benefit from individual or group therapy to focus on psychological stressors as they arise. Doc. 172-1. Based on the competing opinions regarding Ms. Brown's competency, the court ordered a competency hearing.

**Analysis**

Dr. Diana Hamilton, an employee of FMC Carswell, was accepted by the court as an expert in forensic psychology and testified regarding her report and conclusion that Ms. Brown is competent to be sentenced.[1] Dr. Hamilton met with Ms. Brown approximately six to eight times over the course of the 30 day evaluation period. Dr. Hamilton administered numerous tests to Ms. Brown, including tests for malingering. The tests revealed a strong

---

[1] This was Dr. Hamilton's first experience testifying as an expert in court. However, her education, credentials, and her prior experience are sufficient to qualify her as an expert in this matter.

likelihood that Ms. Brown was attempting to exaggerate symptoms of a mental illness and memory impairment. Several tests showed that Ms. Brown deliberately chose the wrong answer for the purpose of feigning or exaggerating memory impairment; had she randomly guessed the answers, her score would have been higher.

Ms. Brown was administered the Inventory of Legal Knowledge ("ILK"), a 61 item test that assesses the response styles of defendants undergoing competency evaluations. As with her other tests, Ms. Brown's very low score was not consistent with genuine responses and was indicative of her attempt to feign impairment in competency-related knowledge.

Dr. Hamilton also interviewed Ms. Brown over the course of two days regarding her competency-related abilities. Despite Ms. Brown's low score on the ILK, she displayed good factual knowledge of courtroom procedures and clearly understood the roles of judges, prosecutors, defense counsel, the jury, and the like. She knew that the judge was in charge of the courtroom. She understood appropriate courtroom behavior.

Ms. Brown claimed at times not to remember what she was charged with or why she pleaded guilty, but she knew she was charged with the drugs and guns found in her house. She knew there are minimum and maximum sentences for drug crimes. Ms. Brown stated she hopes she does not have to spend time in prison, and she would rather be at home. She stated that she would, at her sentencing, apologize to the judge, explain that she had never been in trouble before, and ask to go home to tend to her husband and disabled daughter.

Ms. Brown was able to provide her attorney's name, and she reported having no significant problems working with him. She stated: "My lawyer is so good to me. I go to him

with questions, and he answers them...., but then when I get downstairs in the building, I forget what he told me and have to go back up and ask again. They never told me no or send me away." She did report difficulty understanding things her lawyer tells her. "I don't know how to tell him I'm not getting it. I just go along with it because I don't know how to explain, and I don't want to take his time." Ms. Brown also told Dr. Hamilton: "It's better when [my attorney] writes things down for me... [Then] he makes is simple and lets me absorb what he is telling me."

During the month-long evaluation period, Dr. Hamilton did not observe the paranoia, multiple personalities, Alzeihmer's symptoms, and other difficulties that Ms. Brown self-reported to her and to Dr. Vigen. Ms. Brown learned to navigate the maze of hallways at FMC Carswell. Over time, she began to remember things that, in the beginning of the evaluation, she claimed she could not recall. Throughout her stay, Ms. Brown displayed appropriate behavior and did not receive any write-ups. One mental health nurse remarked: "I'm sorry to see Ms. Brown go. If only everyone was as calm and cooperative as she was."

Regarding the recommendation that Ms. Brown could benefit from individual or group therapy, Dr. Hamilton testified that Ms. Brown talked about the stress she was carrying around as a result of these legal proceedings and additional stressors in her home. Dr. Hamilton testified that upon intake at the facility, Mr. Brown cried frequently and was depressed—common reactions to entering a federal correctional facility for the first time. Nevertheless, Ms. Brown did not present with any major mental health symptoms during the evaluation period that would impede her competence to undergo sentencing, if she chooses.

According to Dr. Hamilton's report: "Ms. Brown may not be interpersonally invested in cooperating with the sentencing process, but her lack of interest should not be misinterpreted as a lack of ability."

Dr. Vigen's report and testimony stand in sharp contrast to that of Dr. Hamilton. After meeting with Ms. Brown three or four times, and consulting with Dr. Pat Sewell, a Shreveport psychiatrist, Dr. Vigen found that Ms. Brown suffers from a neurocognitive disorder, most likely a degenerative disease such as Alzheimer's. He believes she may suffer from major depression with psychotic features. Dr. Vigen questioned whether Ms. Brown was "fully competent" to enter an informed guilty plea in this case. Dr. Vigen opined that Ms. Brown's condition is irreversible, and it is likely that she will progressively deteriorate and need directly supervised custodial care in the future.

Dr. Vigen testified that he did not administer the usual psychological tests to Ms. Brown because he "doubted that she would engage in the testing." The tests that he did try to administer resulted in incomplete and inconsistent responses such that the results lacked validity. For example, on the MMI, Ms. Brown responded "randomly."

The court has very high regard for Dr. Vigen and Dr. Sewell, but the opinions of Dr. Hamilton are based on a much more thorough evaluation over an extended period of time. Dr. Hamilton also administered malingering tests that confirmed that Ms. Brown feigned and exaggerated her condition. Indeed, the offense conduct as set forth in the written factual basis is wholly inconsistent with Dr. Vigen's conclusion. Ms. Brown was an active participant in a very large cocaine distribution conspiracy.

Following a review of the presentence report, the court ordered the Government to supplement the record of the competency hearing to include the audio of the jail calls made from Shawn Swift (Ms. Brown's son) to her. Those calls do not reflect a person with diminished capacity or lack of memory. Ms. Brown followed the instructions of her son (sometimes given to her in rapid fire manner) in contacting several third parties. Her son gave her phone numbers and instructed her to place calls to them on one of his cell phones. Ms. Brown placed the calls and can be heard telling lies to the person called about her son's absence from his drug trafficking business (while her son listened on the other phone line). She told her son about her on-going catering business, and how she just purchased food to prepare and deliver for an event at a local night club—for which she was paid over $700. She also surmises the reason why her son was arrested by Louisiana Probation and Parole was that he failed to call his probation officer to tell her that his court date had been rescheduled. At no time during the calls did Ms. Brown appear confused, disoriented, paranoid, or psychotic.

**Conclusion**

Linda Brown is competent to be sentenced. She has a rational and factual understanding of the proceedings against her. She can assist her lawyer at her sentencing. She has a basic understanding of the charge to which she pleaded guilty, as well as her role in the conspiracy. She understands the role of the individuals in the court proceedings. She understands that she may be sent to prison.

It is true that there is information that Ms. Brown once left her stove on and forgot about it. She also cries when confronted with the facts of this case or the possibility of going to jail. (She cried at her guilty plea, too.) She also is afraid of getting lost in new places. But common sense says that much of this is very common, especially as part of the aging process. None of the symptoms of mental illness that she self-reported are verified objectively. What was verified objectively is that Ms. Brown is a malingerer who wants very much to avoid going to prison for her role in the conspiracy to which she pleaded guilty.

Ms. Brown has a high regard for her attorney, Mr. Keene. She expressed appreciation for Mr. Keene's careful explanation of matters related to this case (including repeating matters several times). The undersigned has great confidence that Mr. Keene can and will continue to guide his client throughout the final step of the proceedings in this court.

Accordingly;

**IT IS RECOMMENDED** that the district judge find that: Linda Brown is competent to be sentenced; she has a rational and factual understanding of the proceedings against her; she can assist her lawyer at her sentencing; she has a basic understanding of the charge to which she pleaded guilty, as well as her role in the conspiracy; she understands the role of the individuals in the court proceedings; and she understands that she may be sent to prison.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this Report and Recommendation to file specific, written objections with the Clerk of Court,

unless an extension of time is granted under Fed. R. Civ. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of February, 2017.

Mark L. Hornsby
U.S. Magistrate Judge